Case No. 14-1028

---

UNITED STATES COURT OF APPEALS,
FOR THE FOURTH CIRCUIT

---

JOHNNY BELSOME; TIMOTHY ALLEN, JODY HINKLEY; DONALD
MARCEL; KEITH KINKLEY; STARR ATCHISON; EDWARD THEIL;
BRETT HUNTER; TARA BELCOM, on behalf of themselves and all
others similarly situated

Plaintiff – Appellants

v.

PAUL R. BURKS; REX VENTURE GROUP, LLC d/b/a zeekrewards.com

Defendants – Appellees

KENNETH D. BELL, as the appointed Receiver of Rex Venture Group,
LLC et al.

Intervenor – Appellee

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CASE NO. 3:12CV800

---

**ORIGINAL BRIEF OF PLAINTIFFS–APPELLANTS
JOHNNY BELSOME, et al.**

Counsel for Plaintiffs-Appellants        Marc R. Michaud, No. 28962
                                         400 Poydras Street, Suite 1680
                                         New Orleans, LA 70130
                                         Telephone: (504) 680-4318
                                         Facsimile: (504) 527-5456

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................. i

INDEX OF AUTHORITIES ........................................................ ii

STATUTES, RULES AND TREATISES ....................................... iii

STATEMENT OF JURISDICTION ............................................. 1

STATEMENT OF ISSUES ........................................................ 1

STATEMENT OF THE CASE..................................................... 2

SUMMARY OF THE ARGUMENT ............................................. 7

LEGAL ARGUMENT............................................................... 11

I. *STANDARD OF REVIEW* ................................................. 13

II. *THE WENCKE TEST* ...................................................... 15

     i. *The Receiver's Standing – First Wencke Prong*................. 15

     ii. *Timing of the Motion to Lift Stay – Second Wencke Factor*.............. 18

III. *THE RECEIVER'S PRIORITY*.......................................... 22

IV.   *ARE CLAIMS BROUGHT UNDER THE FEDERAL SECURITIES LAWS THE SAME AS THOSE BROUGHT BY COURT-APPOINTED RECEIVERS AND/OR BY OTHERS UNDER STATE LAW?* ................ 25

V. *CONCLUSION*................................................................. 29

STATEMENT REGARDING ORAL ARGUMENT ....................... 31

CERTIFICATE OF COMPLIANCE.......................................... 32

CERTIFICATE OF SERVICE .................................................. 33

i

## INDEX OF AUTHORITIES

### CASES

*Atlantic Financial Federal Securities Litigation*,
1991 WL 98757 (E.D.Pa., 1991) .................................................................. 22

*Commondity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*,
713 F.2d 1477, 1483 (10th Cir. 1983) ........................... 11, 12, 16, 17, 19, 20

*Dillon v. Axxsys Int'l, Inc.*, 185 Fed.Appx. 823, 830 (11th Cir. 2006) ......... 26

*Drenis v. Haligiannis*, 452 F.Supp.2d 418, 428 (S.D.N.Y. 2006) ............... 27

*FDIC v. Jenkins*, 888 F.2d 1537 (11th Cir.1989) ....................................... 22

*Freeman v. First Union Nat.*, 329 F.3d 1231 (11th Cir. 2003), certified
   question on other grounds answered, 865 So.2d 1272 (Fla. 2004) .......... 13

*FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D.Ill. 2001) ........... 18

*Howard v. Haddad*, 916 F.2d 167, 170-71 (4th Cir. 1990) ......................... 22

*Hunt v. American Bank & Trust Co. of Baton Rouge, La.*,
606 F. Supp. 1348 (N.D. Ala. 1985), decision aff'd, 783 F.2d 1011,
Fed. Sec. L. Rep. (CCH) P 92533, R.I.C.O. Bus. Disp.
Guide (CCH) P 6200 (11th Cir. 1986) ......................................................... 14

*Independent Clearing House Co.*, 77 B.R. 843, 857 (D. Utah 1987) ........... 27

*Janvey v. Democratic Senatorial Campaign Committee, Inc.*,
712 F.3d 185, 190 (5th Cir. 2013) .............................................................. 14

*Javitch v. First Union Securities, Inc.*, 315 F.3d 619,
625, 2003 FED App. 0011P (6th Cir. 2003) ................................................. 14
*Knauer v. Jonathan Roberts Financial Group, Inc.*,
348 F.3d 230 (7th Cir. 2003) ..................................................................... 15

*Liberte Capital Group, LLC v. Capwill*, 248 Fed. Appx. 650,
662 (6th Cir. 2007) ....................................................................................... 27

*S.E.C. v. Am. Capital Inv., Inc.*, 98 F.3d 1133, 1142 (9th Cir. 1996).*abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998) ................ 11

*S.E.C. v. Provident Royalties, LLC*, 2011 WL 2678840, at *3 (N.D. TX. 2011) .................................................. 17

*SEC v. Stanford Int'l Bank Ltd.*, 2011 WL 1758763, at *2 (5th Cir. 2011) ...................................................................................... 16

*S.E.C. v. Universal Financial*, 760 F.2d 1034, 1035 (9th Cir. 1985) ....... 1, 11

*S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1193 (10th Cir. 2010) ....... 11

*S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) ..... 6, 9, 11, 12, 13, 16

*Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) ............................... 27

*Scholes v. Schroeder*, 744 F.Supp 1419, 1422 (N.D.Ill. 1990) .................... 13

*Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 2 A.L.R. Fed. 190 (2nd Cir. 1968), cert. denied 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 .......................... 26

*Sunrise Securities Litigation*, 916 F.2d 874 (3rd Cir. 1990) ........................ 23

*Terry v. June*, 359 F.Supp.2d 510 (W.D. W.Va. 2005) ............................... 24

## STATUTES, RULES AND TREATISES

Dunn, Nash, The Dispatch, January 20, 2014, available at http://www.the-dispatch.com/article/20140120/NEWS/301209992/1005?p=1&tc=pg#gsc.t ab=0 ................................................................................................. 17

Berkowitz, Sean A., Glennon, Brian T., 2 Bus. & Com. Litig. Fed. Cts. § 17:86 (3d ed.). ................................................................................. 13
10b-5, 17 CFR 240.10b-5 ............................................................. 24

13 Moore's Federal Practice § 66.08[1][b] (3d ed. 2005) ............................ 14

16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction § 3923 n. 1 (1977) ............................................ 1, 11

28 U.S.C. § 1292(a)(1)................................................................. 1, 11

Securities Exchange Act, 15 U.S.C. §§ 78j and 78t(a) ................................... 1

## *STATEMENT OF JURISDICTION*

This case comes before the Court on an appeal stemming from the December 30, 2013 indefinite stay of Belsome, et al.'s case by the United States District Court for the Western District of North Carolina.    The denial of a motion to lift a receivership stay is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1), and as such, this Court has appellate jurisdiction over this matter[1].  This Court also has subject matter jurisdiction over this case as the primary issue herein is a federal question under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder by the Securities and Exchange Commission.

## *STATEMENT OF ISSUES*

Issue 1:  Whether a district court breaches its discretion in staying a case brought under federal Securities laws without adequate reason.

Issue 2:  Whether the District Court breached its discretion in staying Plaintiffs-Appellants' case premised, in part, upon an erroneous statement of fact and/or conclusion of law.

Issue 3:  Whether a court-appointed receiver enjoys an absolute priority over a pool of funds simultaneously sought by investors fraudulently induced to invest in a Ponzi scheme.

---

[1] *See S.E.C. v. Universal Financial*, 760 F.2d 1034, 1035 (9th Cir. 1985), citing 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction § 3923 n. 1 (1977).

Issue 4:  Whether private causes of action for fraudulent misrepresentation under the Securities and Exchange Act and its associated rules are designed to remedy the same harms for the same victims as a court-appointed receiver's clawback lawsuits.

## STATEMENT OF THE CASE

On August 24, 2012, Plaintiffs-Appellants brought the instant action against defendants Rex Venture Group, LLC, d/b/a zeekrewards.com (hereinafter, "Zeek") and Paul R. Burks (hereinafter "Burks") personally in the United States District Court for the Eastern District of Louisiana, Case No. 12-cv-2173[2].  Zeek had previously been placed into receivership and Kenneth D. Bell (hereinafter, the "Receiver") had been appointed Receiver by the United States District Court for the Western District of North Carolina[3].  The crux of Plaintiffs-Appellants' case was that "Burks personally made explicit deceptive and untrue statements of material fact and omitted to state material facts in order to make statements made, in light of the circumstances under which they were made, misleading to Plaintiffs and the other members of the Class[4]." Specifically, Plaintiffs-Appellants alleged that Burks' deceptive statements constituted violations of Sections

---

[2]  *See* Complaint, included in Agreed-Upon Joint Appendix (hereinafter, "Joint Appendix"), at JA000012.
[3]  *See* Agreed Order Appointing Temporary Receiver, at JA000027.
[4]  Complaint, ¶ 33, at JA000021.

10(b) and 20(a) of the Exchange Act, Rule 10b-5 of the Securities and Exchange Commission[5].

Thereafter, on December 4, 2012, at the Receiver's suggestion[6], the Eastern District of Louisiana declined to rule on the defendants' motions to stay, but transferred the case to the Western District of North Carolina[7]. That Court clarified "because the Court finds that this case should be transferred . . . , it will not address the parties' arguments with respect to staying this case . . . Therefore, the Court declines to make any findings on this point."[8]  For the next seven months, Plaintiffs-Appellants ceded the Receiver's request to desist in pursuing their independent claims against Burks under the federal Securities laws, so as to aid in the Receiver's mandate to marshal Receivership assets.  When Plaintiffs-Appellants sought to move forward against Burks, however, the United States District Court for the Western District of North Carolina (hereinafter, the "District Court") stayed the case without opinion on July 3, 2013[9].

By written motion, Plaintiffs-Appellants sought a lift of the stay on July 11, 2013, because they were seeking damages for wrongs committed

---

[5] *See id.* at ¶35, at JA000022.
[6] *See* Intervenor's Motion to Stay Proceedings, at JA000054.  The Receiver made such suggestion in his Reply Memorandum filed on November 28, 2012 (Rec. Doc. No. 38).
[7] *See* Order and Reasons, at JA000094.
[8] *Id.*, at JA00106-07.
[9] *See* Order, at JA000108.

upon them by Burks personally, and as such, the Receiver had no standing to bring those independent claims on their behalf[10]. The Receiver opposed Plaintiffs-Appellants' motion based primarily on the blanket stay of litigation issued in the underlying Receivership action brought by the Securities and Exchange Commission; for his part, Burks objected based primarily on his desire to limit litigation against him[11]. On December 30, 2013, the District Court denied Plaintiffs-Appellants' motion to lift the stay and denied them permission to pursue Burks for their independent claims against him; this Order is the primary focus of the instant appeal[12].

In its December 30, 2013 Order (hereinafter, the "Order"), the District Court declared that because Plaintiffs-Appellants were "seeking to recover for the same harms," and because their "proposed claims against Burks will pursue the very same assets in order to fund a recovery for the same group of people," the District Court ruled that allowing Plaintiffs-Appellants to proceed against Burks for their independent claims under the federal Securities laws "would be inefficient and confusing to victims and would burden the receivership[13]." Effectively, the District Court ruled that there was no difference between causes of action that would redound to the

---

[10] *See* Motion to Lift Stay, at JA000109.
[11] *See* Affidavit of Kenneth D. Bell, at JA000057 and Affidavit of Paul Ray Burks, at JA000089.
[12] *See* Order, at JA000112.
[13] Order, pp. 3-4, at JA000114-15.

Receivership, and those that would redound exclusively to the defrauded investors under the federal Securities laws[14].

Furthermore, the District Court ignored the distinction between those putative class members that had filed claims against the Receivership and those who had not[15]. Specifically, the District Court approved a claims process for the Receivership, in which investors in the scheme had 113 days days to submit evidence of their investment in order to recover some percentage thereof. Once that period passed, no more claims were permitted and as such, hundreds of thousands of putative class members were barred from seeking recovery of their investment from the Receivership estate[16]. And in indefinitely staying Plaintiffs-Appellants' case against Burks, the District Court unequivocally ruled that none of those putative class members could ever hope to recover anything whatsoever, despite there being no connection between their federal causes of action against Burks and their would-be claims against the Receivership. Effectively, therefore, the District Court found that the Court-appointed Receiver enjoyed an absolute

---

[14] *See id.*
[15] *See id.*, at JA000114.
[16] *See* Dunn, Nash, The Dispatch, January 20, 2014, available at http://www.the-dispatch.com/article/20140120/NEWS/301209992/1005?p=1&tc=pg#gsc.tab=0. Approximately 170,000 claims were filed out of an approximately 800,000 potential claims. In other words, the District Court ruled that approximately 630,000 putative class members were barred from any recovery whatsoever.

priority over any funds the defrauded investors/class members might recover

from Burks.  The instant appeal ensued.

## SUMMARY OF THE ARGUMENT

The District Court applied what is known as the *Wencke*[17] test in staying Plaintiffs-Appellants' case; even though this Circuit has yet to formally adopt the same, all parties agree that such test applies to questions of whether to stay a case under the instant circumstances[18]. The District Court determined that the Receivership was still relatively early in its existence and found that Plaintiffs-Appellants would not suffer any "injury" by being forced to stand down, other than that the stay would prevent Plaintiffs-Appellants "from being allowed to jump ahead of the rest of the net losers in the claims process[19]." The District Court did not merely imply that there was no difference between the federal Securities law causes of action pled by Plaintiffs-Appellants herein and those that could be, but had yet to be pled by the Receiver on their behalf, the District Court explicitly – and incorrectly – stated that the groups were "seeking to recover for the same harms[20]."

The law is crystal clear that the Receiver has no standing to pursue Plaintiffs-Appellants' federal Securities claims on their behalf and more, this very Court has clarified that the types of claims at issue herein are not

---

[17] *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984).
[18] *See* Order, p. 2, at JA000113.
[19] Order, p. 3, at JA000114.
[20] *Id.*

derivative of the Receivership's claims, but are instead direct claims that redound exclusively to the Plaintiffs-Appellants. By forcing Plaintiffs-Appellants to wait to pursue their independent claims against Burks until the Receiver has completed his litigation of related, but wholly independent claims against Burks and others, the District Court substantially prejudiced Plaintiffs-Appellants, for no reason other than purported efficiency and convenience. However, as the jurisprudence has shown over and over again, not only are convenience and efficiency not adequate justifications for staying independent investors' federal Securities claims against the perpetrator of a Ponzi scheme, in fact, the staying of such claims has the opposite effect in that the end result would be largely identical litigation and certainly duplicative discovery in subsequent cases: the very definition of judicial waste.

This, of course, presumes that the District Court's intended result is the adjudication of two cases in a row with identical witnesses and discovery and a substantially related set of triable issues. If, however, the District Court's intent was to permanently stay any case from proceeding against Burks under the federal Securities laws, as appears to be the case given the District Court's dicta regarding the alleged flood of litigation that would

ensue were Plaintiffs-Appellants permitted to proceed, this Court is obliged to correct the District Court's misinterpretation of the applicable laws.

Either way, it is clear that the District Court has conflated the types of causes of action brought under North Carolina state laws or those the Receiver has standing to pursue on behalf of the Receivership, with the federal Securities laws pled by Plaintiffs-Appellants herein. In doing so, the District Court rationalized its decision by implicitly finding that the court-appointed Receiver enjoyed a priority over the pool of funds available to satisfy any recovery against Burks. This too is clearly erroneous under the relevant jurisprudence. Most importantly, the District Court's Order had the effect of shutting out entire swaths of putative class members from any recovery whatsoever, ostensibly because they chose not to file claims against the Receivership.

Plaintiffs-Appellants do not seek to litigate any claims whose recovery would redound to the Receivership; to the extent that their Complaint contains any such causes of action, they are not at issue in this appeal. But Plaintiffs-Appellants have every right to pursue their independent claims against Burks individually, as that is the express purpose of the federal Securities laws they cite. Simply, the District Court breached its discretion in staying Plaintiffs-Appellants' case and this Court should

9

reverse such decision and remand to allow Plaintiffs-Appellants to pursue their independent federal Securities claims against Burks.

## *LEGAL ARGUMENT*

This appeal primarily questions the District Court's erroneous analysis in its application of the *Wencke* test in staying Plaintiffs-Appellants' case. The District Court ruled that "[A]llowing Plaintiffs' purported class action to proceed will open the floodgates to a multiplicity of competing actions seeking to enrich individual plaintiffs and their counsel. This will cause a massive burden and expense on the assets of the Receivership and will ultimately work to the detriment of all other Rex Venture victims who will, through the Receiver, bear the ultimate cost of the increased inefficiency and litigation chaos[21]." In short, the overarching reasoning behind the District Court's decision to indefinitely stay Plaintiffs-Appellants' case is that because everyone would be chasing the same recovery dollars to compensate for the same injuries, it is best to allow one person, the Receiver, to collect all available sums and disburse them to the victims of the fraud.

This proposition belies the actual facts of the case. To wit, not every putative class member has filed claims against the Receivership and are no longer permitted to do so. Undersigned counsel alone has 37 unique clients that have retained us to pursue Burks despite not having filed claims against the Receivership. In other words, the District Court's ruling has the effect of

---

[21] Order, pp. 4-5, at JA000115-16.

11

precluding those non claims filing class members (approximately 630,000 people, including but not limited to undersigned's 37 clients) from any recovery from Burks, or anyone else, despite the fact that they have independent causes of action under the federal Securities laws that the Receiver may not legally pursue on their behalf. Furthermore, it is at best unclear how the allowance of a class action would somehow give rise to a multiplicity of competing cases; is not the very point of class action litigation to allow multiple claimants to pursue their claims collectively because on their own, the cost of litigation would be overly burdensome? Would the District Court somehow lose the ability to consolidate or dismiss subsequent cases filed under the same theories of recovery? Indeed, the only explanation for such analysis lies in the District Court's erroneous determination that there was no difference between the state and federal causes of action, combined with its awarding of a priority in favor of the court-appointed Receiver.

The District Court has bucked this Court's precedent and indeed, it has created new and dangerous precedent in its awarding of an absolute priority to a court-appointed equity receiver. Moreover, the District Court has improperly distinguished sister Circuit precedent directly on point, which in and of itself requires this Court's intervention. Simply stated, the

District Court has stayed Plaintiffs-Appellants' case based upon incorrect legal analysis and clearly erroneous findings of fact, and as such, it has breached its discretion in so doing.  Accordingly, this Court should reverse and remand this case for further proceedings.

## I. *STANDARD OF REVIEW*

This Court has jurisdiction over the denial of a motion to lift a receivership stay, which is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1)[22]. "The jurisdictional limits to the district court's power in equity receivership proceedings are issues of law, reviewed *de novo*[23]." Circuit courts review district courts' decisions to deny motions to lift receivership stays for abuses of discretion[24].

In general, when a district court is asked whether to lift a receivership stay, such as the one at issue herein, the court applies what is known as the *Wencke* test, which evaluates the following factors: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party

---

[22] *See S.E.C. v. Universal Financial*, 760 F.2d 1034, 1035 (9th Cir. 1985), citing 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction § 3923 n. 1 (1977).

[23] *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1193 (10th Cir. 2010), *citing S.E.C. v. Am. Capital Inv., Inc.*, 98 F.3d 1133, 1142 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

[24] *See id.* at 1196, *citing Commondity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1483 (10th Cir. 1983); *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984).

will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.[25]  Courts will reverse a district court's refusal to lift a receivership stay when the same is tantamount to a permanent stay[26].   And considerations of judicial economy should rarely, if ever lead to broad curtailments of access to the courts[27].

In this case, the District Court opined that while the third factor weighed in Plaintiffs-Appellants' favor – suggesting that the substance of their legal arguments had merit – the first two factors nevertheless weighed in favor of maintaining the stay of Plaintiffs-Appellants' case[28].   But contrary to the 10th Circuit's admonition, the District Court expressly considered judicial economy in maintaining the receivership stay in this matter[29].   And the effect of the District Court's decision is tantamount to a permanent stay.  This Court should set the record straight in order for this case to proceed, as well as to guide future litigants.

---

[25] *See Wencke*, 742 F.2d at 1231.
[26] *See id.* at 1232.
[27] *See Commondity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1485 (10th Cir. 1983).
[28] *See* Order, p. 2, at JA000113.
[29] *See id.*, at JA000115-16.

## II. THE *WENCKE*[30] TEST.

> *"Fraud on investors that damages those investors is for those investors to pursue – not the receiver.  By contrast, fraud on the receivership entity that operates to its damage is for the receiver to pursue (and to the extent that investors as the holders of equity interests in the entity may ultimately benefit from such pursuit, that does not alter the proposition that the receiver is the proper party to enforce the claim).*[31]"

### i.    The Receiver's Standing – First *Wencke* Prong.

When a court appoints an equity receiver to represent a corporation, the receiver may only assert claims the corporation could have asserted[32]. "This issue is especially prevalent in cases of securities law violations. For example, a receiver lacks standing to bring a cause of action against issuers of securities for alleged violations of securities regulations if the corporation

---

[30] *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984).  This Appeal will focus only on the first two prongs of the test, as the District Court ruled that the third prong weighed in Plaintiffs-Appellants' favor.

[31] *Scholes v. Schroeder*, 744 F.Supp 1419, 1422 (N.D.Ill. 1990) (emphasis in original).

[32] *See Freeman v. First Union Nat.*, 329 F.3d 1231 (11th Cir. 2003), certified question on other grounds answered, 865 So.2d 1272 (Fla. 2004) (affirming district court's holding that receiver for corporation held no power to pursue claims on behalf of the company's creditors); *Hunt v. American Bank & Trust Co. of Baton Rouge, La.*, 606 F. Supp. 1348 (N.D. Ala. 1985), decision aff'd, 783 F.2d 1011, Fed. Sec. L. Rep. (CCH) P 92533, R.I.C.O. Bus. Disp. Guide (CCH) P 6200 (11th Cir. 1986); *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 625, 2003 FED App. 0011P (6th Cir. 2003) ("Because they stand in the shoes of the entity in receivership, receivers have been found to lack standing to bring suit unless the receivership entity could have brought the same action.").

15

subject to the receivership suffers no harm. If the receiver represents the corporation, any causes of action pertaining to investors must be brought by the investors[33]." This jurisprudence is consistent among the Judicial Circuits[34]. In other words, if a cause of action arises out of misrepresentations that induce investors to invest in a fraudulent investment scheme, it is exclusively for those investors to pursue, because if anything, those misrepresentations benefitted the erstwhile corporation.

This proposition is clearly described by the 7th Circuit in *Knauer v. Jonathan Roberts Financial Group, Inc.*[35] There, the Court distinguished between the two phases of a Ponzi scheme: the "sales" phase and the "embezzlement" phase[36]. In short, the Court noted the difference between causes of action relating to the depletion of the receivership *res*, with those causes of action relating to the fraudulent inducement in the purchase and sale of the securities to the defrauded investors[37]. The Court detailed the difference as follows:

---

[33] Berkowitz, Sean A., Glennon, Brian T., 2 Bus. & Com. Litig. Fed. Cts. § 17:86 (3d ed.).

[34] *See e.g. Janvey v. Democratic Senatorial Campaign Committee, Inc.,* 712 F.3d 185, 190 (5th Cir. 2013)("As we explain more fully below, a federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors"); *see also* 13 Moore's Federal Practice § 66.08[1][b] (3d ed. 2005).

[35] 348 F.3d 230 (7th Cir. 2003).

[36] *See id.* at 233.

[37] *See id.* at 233-34.

> [w]e believe that the district court was probably correct in concluding that [the] receiver for [the Ponzi entities], had no standing to pursue the Ponzi sales claims. As we see it, Ponzi entities themselves are not injured by the sales of securities. Even if [the Ponzi entities] were arguably being "misused" by [insiders], this misuse, at the sales stage, resulted only in the fattening of the companies' coffers. Any claim relating to the fraudulent sales rightfully belongs to the wronged investors . . [38].

In sum, a receiver has standing to pursue the "embezzlement" claims as such claims concern the depletion of the receivership *res*, whereas only the defrauded investors have standing to pursue the "sales" claims, as they were fraudulently induced to purchase securities by the misrepresentations of the insiders.

As such, if a receiver lacks standing to assert federal Securities claims rightfully belonging to defrauded investors, then forcing those investors to wait to pursue such claims serves no purpose because they are independent of the receivership.  Hence, such a stay violates the first factor of the *Wencke* test, in that those investors will suffer a substantial harm for no reason whatsoever.   Here, permitting Plaintiffs-Appellants to proceed in conjunction with the Receiver in no way threatens the status quo because the Receiver would be litigating its case regardless; questions of discovery overlap are insufficient to warrant a stay[39].

---

[38] *Id.* at 234.
[39] *See Chilcott, infra*, 713 F.2d at 1485.

The District Court, in the name of efficiency and judicial economy, has indefinitely stayed the Plaintiffs-Appellants' case, despite their status as investors in an undisputed Ponzi scheme. Consequently, the District Court has either presumed, incorrectly, that the Receiver has standing to pursue Plaintiffs-appellants' federal Securities claims on their behalf, or it has decided that it would somehow be more efficient to preside over two substantially similar cases one after the other. Either way, under *Chilcott* and its progeny, the District Court's decision to stay Plaintiffs-Appellants' case was a breach of discretion.

### ii.   <u>Timing of the Motion to Lift Stay – Second *Wencke* Factor.</u>

The second factor courts consider in deciding whether to lift a receivership stay, the timing in the course of the receivership, is fact specific, and takes into account "the number of entities, the complexity of the scheme, and any number of other factors[40]." Accordingly, there is no defining time line the Court can consider. But it is undisputed that when a receivership is in the disbursement phase, or even when a receiver has proposed a distribution plan, the timing factor weighs in favor of lifting the stay[41]. The Receiver in the instant matter has not only proposed a

---

[40] *SEC v. Stanford Int'l Bank Ltd.*, 2011 WL 1758763, at *2 (5th Cir. 2011).
[41] *See S.E.C. v. Provident Royalties, LLC*, 2011 WL 2678840, at *3 (N.D. TX. 2011)(lifting receivership stay less than two years after its inception).

distribution plan to the District Court, he has in fact started notifying claimants about their claims determinations. According to outside media, 80,000 of the approximately 170,000 total claims have received disbursement decisions, and that the Receiver expected to finalize the remainder within the next few weeks[42]; by the time the members of this Court read these words, all claims will likely have been processed.

In denying Plaintiffs-Appellants' Motion to Lift the Stay, the District Court opined that permitting Plaintiffs-Appellants to pursue their independent claims against Burks would somehow lead to a flood of competing actions and discovery demands[43]. In so doing, the District Court appears to have relied on a line of (uncited) cases that describe the diminishing of receivership *res* as justification for staying cases against the receivership estate[44]. This presumes, however, that Plaintiffs-Appellants are seeking recovery out of the Receivership estate itself. They are not. Plaintiffs-Appellants are seeking recovery from Paul R. Burks, and any recovery they might receive from him arises out of the fraudulent misstatements of facts that induced their investments into Zeekrewards.com.

---

[42] *See* Dunn, Nash, The Dispatch, January 20, 2014, available at http://www.the-dispatch.com/article/20140120/NEWS/301209992/1005?p=1&tc=pg#gsc.tab=0.
[43] *See* Order, p. 4, at JA000115.
[44] *See e.g. FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D.Ill. 2001) (recognizing that lifting a stay for certain claimants would open the door to others and "the assets of the receivership estate would quickly be diminished").

19

Unless the Court transfers ownership of Plaintiffs-Appellants' claims against

Burks to the Receivership, the recovery Plaintiffs-Appellants seek would in

no way deplete the Receivership estate were they to succeed against Burks.

This is the distinguishing point made in *Chilcott*[45]. Specifically, the

10th Circuit described the issue of as follows:

> Clearly, the fact that the Receiver is asserting only claims of the pool
> means that the investors will eventually have to proceed with their
> individual actions if they are to recover at all on their claims of
> misrepresentations in the inducement to invest and for damages
> resulting therefrom. It is apparently undisputed between the parties in
> the cases before us that large losses by the pool resulted from
> diversions and speculation with its funds. It is only common sense to
> assume that the Receiver cannot be expected to recover one hundred
> per cent of the pool's diminished assets. Therefore, the investors'
> individual suits for recovery of damages for alleged misrepresentation
> by brokerage houses and their employees, inducing investments in the
> pool, will continue to be of vital importance to the individual
> investors. These suits are thus merely being delayed, but not obviated.
> Hence the conservation of judicial efforts by delaying the investors'
> suits will likely be negligible. Moreover we must agree with the
> appellants that other benefits cited—narrowing issues and increasing
> settlement possibilities—are not persuasive in view of the basic fact
> that the receiver is pursuing only pool claims, and not the claims of
> individual investors.[46]

While the 10th Circuit did not apply the *Wencke* test in *Chilcott*, it

nonetheless considered factors similar to those enumerated therein, as well

as those issues deemed significant by the District Court in the instant

---

[45] 713 F.2d 1477 (10th Cir. 1983).
[46] *Chilcott, infra* at 1485.

matter[47].  In particular, the *Chilcott* Court found that issues of efficiency in

discovery can be dealt with and that such concerns did not warrant the

injunction of the investors' actions[48].  Concluding that the stay was in error,

the *Chilcott* Court ruled: "We must hold that in view of the lack of sufficient

justification for the stay order enjoining the prosecution of the investors'

actions, the grant of the stay was in error and an abuse of discretion, and the

stay order is therefore reversed and the cause is remanded for further

proceedings."[49]

    In this case as in *Chilcott,* it is common sense that claimants will not

receive 100% of their investments back from the Receivership.  And while

this again ignores those putative class members that did not file claims

against the Receivership, the central point is that all class members, like

those in *Chilcott*, will eventually have to proceed against the perpetrator –

Burks - in order to recover as much of their investments as possible.

Accordingly, the timing of Plaintiffs-Appellants' motion to lift stay is

irrelevant as neither the Court nor the Receiver can stop Plaintiffs-

Appellants from proceeding against Burks altogether, and hence, "the

conservation of judicial efforts by delaying the investors' suits will likely be

---

[47] *See id.*
[48] *See id.*
[49] *Id.*

negligible."[50]  In fact, judicial efforts would necessarily double.

## III.  <u>THE RECEIVER'S PRIORITY.</u>

In indefinitely staying the Plaintiffs-Appellants' case, the District Court implicitly ruled that the Receiver enjoyed a priority over putative class members to any pool of recovery funds from Burks[51].  Specifically, the District Court said: "The Receiver's [as yet unfiled] claims against Burks will fund the recovery of victims of the scheme, while Plaintiffs' proposed claims against Burks will pursue the very same assets in order to fund a recovery for the same group of people[52]."  Further, the District Court opined that "[H]aving competing lawsuits for the same funds at the same time with different counsel (and more on the horizon) could not possibly be more efficient[53]."

Once again, it is imperative for this Court to note that the District Court here ignores the simple fact that many class members have not filed claims against the Receivership and are no longer permitted to do so.  Ever. As such, this alone renders the District Court's reasoning clearly erroneous. But the question remains, does a court-appointed equity receiver enjoy a priority over recovery funds, even if Plaintiffs-Appellants were seeking "the

---

[50] *Chilcott, infra* at 1485.
[51] *See* Order, p. 3, at JA000114.
[52] *Id.*
[53] Order, p. 4, at JA000115.

very same assets in order to fund a recovery for the same group of people"?

Fortunately, this Court has already answered the question, at least as it pertains to the Federal Deposit Insurance Corporation[54]. To wit, when faced with the issue, this Court stated:

> Of course, it would be convenient to the FDIC to have an arsenal of priorities, presumptions and defenses to maximize recovery to the insurance fund, but this does not require that courts must grant all of these tools to the FDIC in its effort to maximize deposit insurance fund recovery. Any rule fashioned must have its base on the goal of effectuating congressional policy. We are not convinced Congress considered collections against parties such as the bank-related defendants in this case as a necessary part of the recovery to the deposit insurance fund. Any such priority over third-party lawsuits will have to come from Congress, not this Court.[55]

Accordingly, the FDIC would not enjoy a priority over Plaintiffs-Appellants' claims herein because said claims are direct, non-derivative and do not redound to the Receivership.

The same can be said about the Resolution Trust Company ("RTC")[56]. In denying the RTC/Receiver's motion to stay a class action brought by defrauded investors, premised upon a perceived priority, another district court concluded that no priority existed in non-derivative securities fraud

---

[54] *See Howard v. Haddad*, 916 F.2d 167, 170-71 (4th Cir. 1990).
[55] *Id., quoting FDIC v. Jenkins*, 888 F.2d 1537 (11th Cir.1989).
[56] *See In re Atlantic Financial Federal Securities Litigation*, 1991 WL 98757 (E.D.Pa., 1991).

suits like the one at issue herein[57]. Therefore, if neither the FDIC nor the RTC would enjoy a priority over Plaintiffs-Appellants' claims under the federal Securities laws, the District Court was wrong to award such a priority to the Receiver over any funds that may be recovered from Burks.

Neither the Agreed Order Appointing Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC, nor the statutes cited therein, describe a priority in favor of the Receiver[58]. Moreover, to the extent that the District Court was applying North Carolina state law to the issue, as it appeared to do in referencing a North Carolina class action filed under state law,[59] that too is inapposite to jurisprudence out of this Circuit[60]. As such, this Court should rule that because Congress did not confer any priority to court-appointed receivers, that the District Court was wrong to

---

[57] *See id.* at *3, quoting *In re Sunrise Securities Litigation*, 916 F.2d 874 (3rd Cir. 1990)("[we do not] believe that our holding is inconsistent with *Jenkins*. To the extent that depositors assert individual, nonderivative fraud claims against the officers, directors, auditors, or attorneys of insolvent financial institutions, they may proceed on equal footing with the FDIC against these defendants.").

[58] *See* Agreed Order Appointing Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC, p. 3, citing 28 U.S.C. §§ 754, 959 and 1292, and Fed. R. Civ. P. 66, at JA000027.

[59] *See* Order, p. 4, at JA000115.

[60] *See Terry v. June*, 359 F.Supp.2d 510 (W.D. W.Va. 2005), amended on reconsideration 420 F.Supp.2d 493, motion to amend denied 2006 WL 1049526 (Application of federal common law, rather than state law, was appropriate to resolve receiver's various claims against alleged recipients of fraudulent transfers from alleged Ponzi scheme that involved 26 states and foreign countries, in view of significant conflict between federal interests involved and application of state law; there was a strong need for uniformity in the treatment of receiver's claims, which were integral adjunct to enforcement of federal securities laws, and application of varying state and foreign laws could have frustrated receiver's objectives.).

have done so in this case, and should reverse and remand for Plaintiffs-Appellants to proceed with their federal Securities claims against Burks.

## IV. ARE CLAIMS BROUGHT UNDER THE FEDERAL SECURITIES LAWS THE SAME AS THOSE BROUGHT BY COURT-APPOINTED RECEIVERS AND/OR BY OTHERS UNDER STATE LAW?

In its Order, the District Court stated: "the Receiver has sought leave to begin filing clawback litigation based on the same transactions and occurrences, for the benefit of the same Rex Venture victims and seeking to recover for the same harms[61]." Further, the District Court referenced a class action brought (and subsequently stayed) in and under North Carolina state law[62]. The District Court's clear implication here is that there is simply no difference between causes of action brought under state law, which may or may not redound to the Receivership, and those federal Securities laws violations alleged in Plaintiffs-appellants' pleading, which do not. But it cannot be emphasized enough that the District Court's ruling excludes all putative class members that have not, and cannot file claims against the Receivership, despite their having independent causes of action against Burks that the Receiver may not legally pursue on their behalf.

---

[61] Order, p. 3, at JA000114.
[62] *See id.*, p. 4, at JA000115.

Such omission notwithstanding, Plaintiffs-Appellants sued Burks for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, including SEC Rule 10b–5 and Section 20 of the Exchange Act[63]. Accordingly, the issue for this Court in this regard is whether Congress intended these federal statutes as "largely duplicative" of those causes of action that redound to a court-appointed receivership. Put another way, was the District Court correct in ruling that Burks' misappropriation of Rex Venture Group, LLC assets was the same transaction or occurrence as the material misrepresentations he made that induced Plaintiffs-Appellants to invest in his Ponzi scheme?

Rule 10b-5, 17 CFR 240.10b-5, on which this action is predicated in part, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
>
> (1) to employ any device, scheme, or artifice to defraud,
>
> (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

---

[63] *See* Complaint, at JA000012. While Plaintiffs-Appellants did allege separate causes of action for breach of fiduciary duty and fraudulent misrepresentation under Louisiana law, the same are not at issue in this appeal.

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The 2nd Circuit described Congressional intent of such statute as follows: "[B]y that Act Congress purposed to prevent inequitable and unfair practices and to insure fairness in securities transactions generally, whether conducted face-to-face, over the counter, or on exchanges . . .[64]"

The key to this Court's analysis, therefore, lies in the distinction between the contract-based causes of action that redound to the Receivership and the tort-based claims that may only be brought by the Plaintiffs-Appellants themselves[65]. According to the 7th Circuit, "it is true that investors [in a Ponzi scheme] are not contractual creditors of the corporation, any more than the corporation's stockholders are. But *defrauded* investors, as we have pointed out, are tort creditors[66]." The 6th Circuit analyzes the issue similarly: "the instant action does not concern tortious conduct that injures or diminishes property in trust. Rather, it

---

[64] *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 2 A.L.R. Fed. 190 (2nd Cir. 1968), cert. denied 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756.

[65] *See Dillon v. Axxsys Int'l, Inc.*, 185 Fed.Appx. 823, 830 (11th Cir. 2006) (finding plaintiffs who were fraudulently induced into investing to be "creditors" of a corporation by virtue of having "claims" against it); *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) ("[D]efrauded investors ... are tort creditors."); *Drenis v. Haligiannis*, 452 F.Supp.2d 418, 428 (S.D.N.Y. 2006) ("[Limited partner-investors] here are tort creditors of the Partnership by virtue of their claims against the defrauding defendants."); *In re Independent Clearing House Co.*, 77 B.R. 843, 857 (D. Utah 1987) (Ponzi scheme investors "had a claim against the debtors for the return of [their] money.")

[66] *Scholes*, 56 F.3d at 755 (internal citations omitted)(emphasis in original).

concerns tortious conduct that induced the decision to place property in trust. ***Indeed, the claims arising from that tortious conduct never were trust property***[67]."

In short, contrary to the District Court's assertion, the recovery sought by Plaintiffs-Appellants is not the same as that which the Receiver will (but has yet to) be attempting to accomplish vis-à-vis Burks. Whether the Court distinguishes such causes of action based on the "embezzlement" or contract-based claims, or the "sales" or tort-based claims, the conclusion is the same. The causes of action arise under different statutes and the Receiver has no right whatsoever to any part of any recovery Plaintiffs-Appellants might procure from Burks. Indeed, Plaintiffs-Appellants' claims against Burks under the federal Securities laws were never the property of Rex Venture Group, LLC and as such, they were never the property of the Receivership. The District Court's conflation of these rights, or its transfer of Plaintiffs-Appellants' property to the Receiver, therefore, is clearly erroneous and a breach of its discretion. Therefore, this Court should reverse and remand this case for further proceedings against Burks.

---

[67] *Liberte Capital Group, LLC v. Capwill*, 248 Fed. Appx. 650, 662 (6th Cir. 2007)(emphasis added).

28

## V.    __CONCLUSION.__

The Court should remand this case to the District Court to allow Plaintiffs-Appellants to pursue their independent claims against Burks under the federal Securities laws.  There is no justification whatsoever for forcing Plaintiffs-Appellants to wait until the Receiver finishes whatever litigation he may or may not engage in.  Other Circuits have said doing so is a breach of the district courts' discretion.

The distinction the District Court glosses over is that the sales type tort-based claims of Plaintiffs-Appellants are wholly different from the embezzlement type contract-based claims that redound to the Receivership. The Receiver simply lacks standing to bring those sales type claims on behalf of Plaintiffs-Appellants.  And because this Court has already ruled that institutions like the FDIC (and the RTC) do not enjoy a priority over defrauded investors, the District Court was wrong to rule that the court-appointed Receiver in this case did.  Finally, when the Court considers that a great many putative class members cannot recover one penny from the Receivership, the Court must agree that the District Court's conflation of the federal and state statutes, and the wrongs they are meant to right, was clearly erroneous and a breach of discretion.

29

Respectfully Submitted, this 14th day of February, 2014.

                              PATRICK MILLER LLC

                              /s/ *Marc R. Michaud*
                              Marc R. Michaud, La. Bar No. 28962
                              400 Poydras Street, Ste. 1680
                              New Orleans, LA 70130
                              (504) 680-4318 (Telephone)
                              (504) 527-5456 (Facsimile)
                              mmichaud@patrickmillerlaw.com
                              Attorney for Plaintiffs-Appellants

Johnny BELSOME, et al., Plaintiffs - Appellants, v. PAUL R. BURKS, et al., Defendants - Appellees.

## STATEMENT REGARDING ORAL ARGUMENT

The Court need not grant oral argument in this appeal, as the issues herein are questions of law that can be resolved on the briefs.  Should Defendants-Appellees request oral argument, however, Plaintiffs-Appellants do not object thereto and will appear accordingly.

/s/ *Marc R. Michaud*

Marc R. Michaud

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**No.** 14-1028                    **Caption:** Belsome, et al v. Burks, et al

**CERTIFICATE OF COMPLIANCE UNDER FED. R. APP. P. 32(a)(7)**

1. This brief has been prepared using:

   • MS Word for Mac, Times New Roman, 14 point

2. EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, the brief contains:

   • 6491 Words

I understand that a material misrepresentation may result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief.


/s/  *Marc R. Michaud*                        February 14, 2014
Signature of Filing Party                     Date

32

## <u>CERTIFICATE OF SERVICE</u>

I, Marc R. Michaud, Attorney for Plaintiffs-Appellants, Johnny Belsome, et al., do hereby certify that I have this day served a true and correct copy of the above and foregoing Appellant's Opening Brief via Electronic Filing and Electronic Mail on the following person:

Noell Peter Tin
Tin, Fulton, Walker & Owen, PLLC
301 East Park Ave.
Charlotte, NC 28203

Kenneth D. Bell
McGuire Woods, LLP
Suite 3000
201 North Tryon Street
P.O. Box 31247
Charlotte, NC 28231

This 14th day of February, 2014              /s/ *Marc R. Michaud*
                                             Marc R. Michaud